# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL. ANTHONY R. SPAY, | : |
| | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. : 09-4672 |
| v. | : |
| | : HON. RONALD L. BUCKWALTER |
| CVS CAREMARK CORPORATION, | : |
| CAREMARK Rx, LLC (f/k/a CAREMARK Rx, INC.), | : |
| | : |
| CAREMARK, LLC (f/k/a/ CAREMARK, INC.) | : |
| SILVERSCRIPT, LLC (f/k/a SILVERSCRIPT, INC.), | : |
| | : |
| | : |
| Defendants | : |
| | : |

---

## PLAINTIFF/RELATOR ANTHONY R. SPAY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL

Marc S. Raspanti
Michael A. Morse
Pamela C. Brecht
Francesco P. Trapani
I.D. Nos.: 41350, 80507, 62249, 209123
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
1818 Market Street
Suite 3402
Philadelphia, PA 19103
Tel: (215) 320-6200
Fax: (215) 981-0082

Paul A. Traina
Jared W. Beilke
Steven J. Lipscomb
ENGSTROM, LIPSCOMB & LACK, P.C.
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4113
Tel: (310) 552-3800/Fax: (310) 552-9434

Michael I. Leonard, Esquire
Leonard Law Offices, Inc.
203 N. LaSalle St., Suite 1620
Chicago, IL 60601
Tel: (312)380-6559

Attorneys for Plaintiff/Relator Anthony R. Spay

# Table of Contents

Table of Authorities ........................................................................................................... ii

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 4

III.    LEGAL STANDARD ................................................................................................ 6

IV.     DEFENDANTS SHOULD BE COMPELLED TO PRODUCE THE REQUESTED
        DOCUMENTS, WHICH ARE DIRECTLY RELEVANT TO THE NATIONWIDE
        FALSE CLAIMS ALLEGATIONS THIS COURT HAS ALREADY SUSTAINED ........ 8

   A.   Plaintiff's Requests Are Directly Relevant to the Nationwide False Claims Allegations
        This Court Has Already Sustained .................................................................... 8

   B.   Defendants Have No Legitimate Basis for Refusing to Produce Nearly All of the
        Documents Sought by Plaintiff ....................................................................... 19

      1.   Defendants Have No Legitimate Basis for Refusing to Produce  Documents Beyond the
           MCS Plan In Puerto Rico ............................................................................ 19

      2.   Defendants Have No Legitimate Basis for Refusing to Produce  Documents Beyond
           Calendar Year 2006 .................................................................................... 23

      3.   This Court Should Compel Defendants to Produce All Responsive Documents to Those
           Requests to Which Defendants Refuse to Provide Any Documents ........................... 31

      4.   This Court Should Overrule Defendants' Objections of Confidentiality, and Compel
           Defendants to Produce All Responsive Documents ....................................... 32

      5.   This Court Should Overrule Defendants' Objections Based on Basic Industry Terms,
           and Compel Defendants to Produce All Responsive Documents ................................. 34

V.      CONCLUSION ........................................................................................................ 36

# Table of Authorities

**Federal Cases**

*1221122 Ontario Ltd. v. TCP Water Solutions, Inc.*, No. 10-c-4942,
2011 WL 2516531 (N.D. Ill. June 23, 2011) ......................................................... 33

*Belcher v. United States*, No. 03-1252, 2006 WL 2583453 (M.D. Pa. Sept. 6. 2006) .................. 6

*Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186 (D.N.J. 2010) ............................................. 10, 17

*Buzoiu v. Risk Management Alternatives, Inc.*, No. Civ. A.03-3579,
2004 WL 870700 (E.D. Pa. Apr. 5, 2004) ...................................................................... 34

*Carlson Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080 (D. Minn. 1973) ................ 29

*Corrigan v. Methodist Hosp.*, 158 F.R.D. 54 (E.D. Pa. 1994) ................................................ 7, 33

*Dart Drug Corp. v. Corning Glass Work*, 480 F. Supp. 1091 (D. Md. 1979) ............................. 29

*Davidson v. Light*, 79 F.R.D. 137 (D. Colo. 1978) .............................................................. 14

*Denny v. Carey*, 72 F.R.D. 574 (E.D. Pa. 1976) ................................................................ 21

*Dolarian Capital, Inc. v. SOC, LLC*, No. 1:11–cv–0031–LJO–BAM,
2012 WL 4026818 (E.D. Cal. Sept. 12, 2012) ............................................................. 32, 33

*Feature Film Services, Inc. v. Arts & Entertainment Network Corp.*, No. 91-C-459
1991 WL 290677 (N.D. Ill. Jan. 13, 1991) .................................................................. 34

*Fein v. Numex Corp.*, 92 F.R.D. 94, 97 (S.D.N.Y. 1981) ..................................................... 26

*Fleming v. Mountain States Health Alliance*, No. 1:11cv00050,
2012 WL 1909343 (W.D. Va. May 25, 2012) ............................................................... 17

*Haring v. Eckerd Corp.*, No. Civ. A. 01-3988, 2002 WL 32348343
(E.D. Pa. May 16, 2002) ........................................................................................ 7

*Hearst/ABC-Viacom Entertainment Services v. Goodway Marketing, Inc.*,
145 F.R.D. 69 (E.D. Pa. 1992) ................................................................................ 36

*Hicks v. Big Brothers/Big Sisters of Am.*, 168 F.R.D. 528 (E.D. Pa. 1996) ............................... 33

*High Point SARL v. Sprint Nextel Corp.*, 09-2269-CM-DJW,
2011 WL 4008009 (D. Kan. Sept. 9, 2011) ............................................................. 33, 34, 35

*Hovind v. Comm'r*, 104 T.C.M. (CCH) 400, T.C. Memo. 2012-281 (T.C. 2012) ...................... 13

*In re iPhone/iPad Application Consumer Privacy Litig.*, No. 11-MD-2250-LHK,
2012 U.S. Dist. LEXIS 166711 (N.D. Cal. Nov. 21, 2012)................................................ 21, 22

*Johnson v. City of Philadelphia*, No. Civ. A. 94-1429, 1994 WL 612785
(E.D. Pa. Nov. 7, 1994)................................................................................................ 7

*Josephs v. Harris Corp.*, 677 F.2d 985 (3d Cir. 1982) ................................................... 7

*Lykins v. CertainTeed Corp.*, No. 11-2133-JT M, 2012 WL 3542016
(D. Kan. Aug. 16, 2012) ............................................................................................. 33

*Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO PC, 2012 WL 2029720
(E.D. Cal. June 5, 2012).............................................................................................. 32

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) .............. 32

*Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, No. 01-2394,
2002 WL 1870452 (E.D. Pa. July 29, 2002)................................................................. 12, 29

*Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412 (E.D. Pa. 1996) ........................................ 7

*Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340 (1978) ..................................................... 6

*Pansy v. Borough of Stroudsberg*, 23 F.3d 772  (3d Cir. 1994) .................................................. 34

*Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc.*, No. 10-222,
2011 WL 239655 (E.D. Pa. Jan. 25, 2011) .......................................................................... 6

*Robertson v. Allstate Ins. Co.*, No. CIV.A. 98-4909,
1999 WL 179754 (E.D. Pa. Mar. 10, 1999)......................................................................... 17

*Romero v. Allstate Ins. Co.*, 271 F.R.D. 96 (E.D. Pa. 2010)...................................................... 7

*Rorer Int'l Cosmetics, Ltd. v. Halpern,* 85 F.R.D. 43 (E.D. Pa. 1979)....................................... 26

*Securities and Exchange Comm'n. v. Wall Street Capital Funding, LLC, et. al.*,
No. 11-20412, 2011 WL 2295561 (S.D. Fla. June 10, 2011).................................................. 27

*Syposs v. United States*, 179 F.R.D. 406 (W.D. N.Y. 1998) ................................................... 14

*Trusal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987).............. 34

*U.S. ex rel. El-Amin v. George Washington Univ.*, 522 F. Supp. 2d 135 (D.D.C. 2007) .............. 8

*U.S. ex rel. Falsetti v. Southern Bell Tel. and  Tel. Co.*,
915 F.Supp. 309  (N.D. Fla. 1996).............................................................................. 14

*U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03-0842,
2009 WL 3103836, (M.D. Tenn. Sept. 24, 2009) ................................................ 15

*U.S. ex rel. Fry v. Guidant Corp.,* 2007 U.S. Dist. LEXIS 88494
(M.D. Tenn. Nov. 30, 2007) ............................................................ 21, 22, 27

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ................................. 9

*United States ex. rel. Landsberg v. Argentis Medical, P.C.*,
No. 2:03-CV-1263, 2006 WL 1788381 (W.D. Pa. June 27, 2006) ........................ 27

*U.S. ex rel. Minge v. Turbine Engine Components Technology Corp.*,
No. 07–1212–MLB–KGG, 2011 WL 2607082 (D. Kan. July 1, 2011) ................ 10, 17, 35

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of America*,
565 F.Supp.2d 153 (D.D.C. 2008) ............................................................ 9

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.*,
238 F. Supp. 2d 258 (D.D.C. 2002) ...................................................... 21, 27

*U.S. ex rel. Roberts v. QHG of Indiana, Inc.*, No. 1:97-CV-174,
1998 WL 1756728 (N.D. Ind. Oct. 8, 1998) ................................................ 27

*U.S. ex rel. Sanders v. Allison Engine, Co.*, 196 F.R.D. 310 (S.D. Ohio 2000) .................. 14

*U.S. ex rel. Spay v. CVS Caremark Corp.*, --- F. Supp. 2d ---,
2012 WL 6645537 (E.D. Pa. Dec. 20, 2012) ........................................... passim

*U.S. ex rel. Spay v. CVS Caremark Corp.*, 09-4672,
2013 WL 1755214 (E.D. Pa. April 24, 2013) ................................................ 21

*U.S. ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295 (3d Cir. 2011) ................. 27

*United Phosphorous Ltd. v. Fox*, No. 03-2024-JWL,
2003 WL 21241847 (D. Kan. May 2, 2003) ................................................ 34

*United States v. Kensington Hosp.*, 760 F. Supp. 1120 (E.D. Pa. 1991) ........................ 27

*United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995) ........................................ 13

*United States v. Torrance*, 164 F.R.D. 493 (C.D. Cal. 1995) .................................. 28

*Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281 (C.D. Cal. 1996) ............................... 33

**Federal Statutes**

31 U.S.C. § 3729(a)(2) ................................................................................................ 16

31 U.S.C. §§ 3729-33 .................................................................................................... 4

42 U.S.C. § 1395w-101(a)(2) ....................................................................................... 3

**Federal Rules**

Fed. R. Civ. P. 26 ..................................................................................................... 2, 6

Fed. R. Civ. P. 33 ................................................................................................... 7, 31

Fed. R. Civ. P. 34 ................................................................................................. 19, 31

Fed. R. Civ. P. 37 .............................................................................................. 1, 7, 36

Loc. R. 26.1(f) ............................................................................................................. 1

**Federal Regulations**

42 C.F.R. § 423.501 .................................................................................................... 15

Plaintiff/Relator Anthony R. Spay ("Relator" or "Plaintiff"), by and through his undersigned counsel, pursuant to Federal Rule of Civil Procedure 37, respectfully submits this Memorandum of Law in Support of his Motion to Compel Defendants CVS Caremark Corporation, Caremark Rx, LLC, Caremark, LLC, and Silverscript, LLC (collectively, "Defendants" or "Caremark Defendants")[1] to produce documents responsive to his First Request for Production of Documents served on March 29, 2013.[2]   Relator also seeks payment of expenses for filing this Motion, including attorney's fees, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).

## I.   PRELIMINARY STATEMENT

More than six months after this Court denied Defendants' Motion to Dismiss, and ruled in a 98-page Opinion that "allowing full discovery to proceed in the present case would not result in . . . [a] fishing expedition," *U.S. ex rel. Spay v. CVS Caremark Corp.*, --- F. Supp. 2d ---, 2012 WL 6645537, at *41 n.32 (E.D. Pa. Dec. 20, 2012) – and three months after Relator served Defendants with his First Request for the Production of Documents (the "Requests")[3] – Defendants continue to withhold the overwhelming majority of their documents responsive to Relator's Requests.

The documents requested are relevant to the core allegation in this case – *i.e.*, that Defendants submitted false claims on a nationwide basis to the Medicare Prescription Drug

---

[1] Defendants are "the largest provider of prescription and related healthcare services in the United States," and "their subsidiaries fill or manage more than one billion prescriptions per year."  *See* Defts.' Answer [Dkt. No. 80] ¶¶ 22, 24.

[2] Pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26.1(f), Relator's counsel conferred in writing and by telephone with Defendants' current counsel in a good-faith effort to resolve by agreement the issues raised in Relator's Motion to Compel, but the parties have been unable to resolve this dispute with Defendants' current or prior counsel.  A meet-and-confer letter from Relator's counsel to Defendants' counsel dated May 13, 2013 is attached hereto as Exhibit "Ex." A.  Relator's counsel's Certificate of Good Faith, required by Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26.1(f), is attached hereto as Ex. B.

[3] Plaintiff's First Request for Production of Documents is attached hereto as Ex. C.

1

Program (or "Part D Program").   Broadly speaking, the Requests seek the following types of information:

1. Documents regarding the Prescription Drug Event ("PDE") claims Defendants submitted to CMS and/or Part D Sponsors in connection with the Part D Program, which are the very false claims at issue in this case (Requests 5, 6, 9, 10, 11, 20, 21, and 42).

2. Documents that refer to Defendants' own practices, policies and/or procedures for adjudicating and submitting claims to the Part D Program (Requests 1, 3, 7, 8, 18, 19, 30, 31, 34, 35, 36, 37, 39, 43, 44, 45, 55, 56, 57, 58, and 60).

3. Copies of Defendants' bids, proposals, and or contracts with Part D Plans and/or Downstream Entities, which, as this Court noted, are directly involved in the Part D claims at issue in this case (Requests 12, 13, 14, 15, 16, 17, and 32).

4. All relevant internal and external communications regarding the core allegations of fraud in the First Amended Complaint (Requests 18, 25, 26, 27, and 28).

5. Information regarding past audits or investigations of Defendants' Part D activities, including an audit by the Federal Government of Defendant Silverscript's procedures to prevent fraud, waste, and abuse involving the Part D Program (Requests 22, 23, 24, 33, 41, 50, 51, 52, 53, and 59).

6. Documents and communications exchanged between Defendants and the United States Government regarding the allegations in the First Amended Complaint (Requests 46, 47, 48, and 49).

In disregard of this Court's Order denying Defendants' Motion to Dismiss, and the mandates of Federal Rule of Civil Procedure 26, Defendants refuse to produce any documents beyond the scope of the one MCS audit in Puerto Rico in 2006.   In particular, Defendants have taken the position that:

1. Defendants need not produce any documents beyond the scope of the MCS audit in Puerto Rico;

2. Defendants need not produce any documents beyond calendar year 2006;

2

3.     For more than a dozen Responses, Defendants refuse to produce any documents *whatsoever* – not even those documents limited to MCS in 2006;

4.     Unspecified confidentiality agreements preclude Defendants from producing documents; and

5.     Defendants are unable to understand a number of basic industry terms used in Relator's Requests such as "PDE data," "PDE claims," "Part D Plan Sponsor," "Prescriber Identifier," "MAC Pricing," and "Gender Specific."

Defendants also assert that Relator's "nationwide allegations" are limited to only three practices: dispensing drugs with false prescriber identifiers, dispensing drugs with obsolete NDC codes, and dispensing gender specific drugs for the opposite gender.[4]

Defendants unilaterally aim to transform this case from the nationwide fraud action this Court has already sustained, to an action limited solely to Defendants' conduct for one Part D Sponsor in Puerto Rico – MCS – and for only one year – 2006.[5]  This Court, however, has already found a "strong inference that Defendants submitted false claims nationwide" (*id.* at *42), and that "discovery on the scope of these broader practices will not create any undue burden on Defendants."  *Id.* at *41 n.32.  As was the case with many of their Affirmative Defenses, which this Court has already stricken, Defendants again are attempting to re-litigate the failed arguments they made in their Motion to Dismiss.  This Court should not condone Defendants' obstructionism and instead compel Defendants to respond fully and expeditiously to Plaintiff's Requests.

---

[4] *See* Ex. D, Defendants' Objections and Responses to the Requests, General Objection No. 6, at 3;  Ex. E, Email from Patricia Richman to Relator's counsel dated June 9, 2013;  Ex. F, Letter from Relator's Counsel in response to Ms. Richman's email dated June 10, 2013.

[5] The Medicare Part D Program became effective on January 1, 2006.  42 U.S.C. § 1395w-101(a)(2).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is a case arising under the Federal False Claims Act, 31 U.S.C. §§ 3729-33.  In brief, Plaintiff alleges that Defendants have, since 2006, engaged in an ongoing nationwide scheme leading to the payment of false claims submitted to the Medicare Part D Program.  Specifically, Relator alleges the following six areas of fraud:

1. _False Prescriber Identifiers_: fraudulent payment for claims where Defendants as the Pharmacy Benefits Manager ("PBM") adjudicated claims even though their network pharmacies failed to report accurate physician identifiers, and instead used "push" numbers.

2. _Gender–Specific Deviations_: fraudulent dispensing of gender-specific drugs to the opposite gender.

3. _Expired Drugs_: fraudulent submission of claims for expired drugs.

4. _MAC Pricing_: fraudulent failure to apply Maximum Allowable Cost ("MAC") pricing to all MAC drugs.

5. _No Prior Authorization_: fraudulent adjudication of claims where drugs were dispensed and claims were paid without prior authorization.

6. _Over Limits_: fraudulent adjudication of claims processed for quantities of drugs or days supply over the approved limit.

_Spay_, 2012 WL 6645537, at *7.[6]

On December 20, 2012, this Court issued a 98-page Opinion denying in-full Defendants' Motion to Dismiss Relator's First Amended _Qui Tam_ Complaint.[7]  The Court's Memorandum and Order stated, in relevant part:

Plaintiff does not focus on particular fraudulent claims, but rather specific fraudulent practices, which he contends were carried out with respect to Defendants' contracts with other Part D Sponsors

---

[6] The allegations against Defendants are well explained in the Court's Opinion of December 20, 2012, which denied Defendants' Motion to Dismiss, and will be repeated here only as they relate to the instant Motion.

[7] The United States filed a Statement of Interest in which it urged the Court to deny Defendants' Motion to Dismiss.  Dkt. 73, p. 17-18.

> other than MCS.   Based on the allegations in the Complaint,
> discovery on the scope of these broader practices will not create an
> undue burden on Defendants.

*Spay*, 2012 WL 6645537 at *41, n.32.

Despite the Court's decision, Defendants sought a proposed Scheduling Order that would have limited discovery only to Defendants' conduct in Puerto Rico in 2006.[8] Defendants' proposal provided for phased discovery requiring that Relator prove fraud with regard to Defendants' conduct related to MCS in Puerto Rico before obtaining nationwide discovery.[9] The Court declined Defendants' invitation to undo its decision on the Motion to Dismiss, and did not impose geographic or temporal limits on the scope of discovery.

On March 29, 2013, Plaintiff served his Requests on Defendants.   These Requests, as outlined below, seek documents that are plainly relevant to the core allegations in Plaintiff's First Amended Complaint (that Defendants submitted false claims on a nationwide basis to Medicare regarding the six areas of fraud identified above).

Defendants inexplicably, and in direct contravention of this Court's prior Order, have failed to produce documents responsive to Relator's Requests.   In lieu of producing a single document in Response to Relator's Requests, Defendants responded with a 42-page series of Responses and Objections (the "Responses").   *See* Ex. D.

On May 13, 2013, Relator's counsel sent Defendants' counsel a letter outlining the deficiencies in Defendants' Responses.   *See* Ex. A.   The parties then participated in a teleconference on June 4, 2013.   During that call, Defendants stated that they would not

---

[8] The Parties' Joint Scheduling Conference Report, which includes Defendants' Proposed Schedule, is attached hereto as Ex. G.

[9] Defendants' position has evolved since they submitted their Proposed Scheduling Order.   At that time, Defendants did not dispute that information regarding Relator's nationwide allegations was discoverable. Defendants now seem to argue the opposite – that information beyond the MCS audit is not discoverable at all.

withdraw their objections, or produce most of the documents requested.   Defendants did, however, state that they would expand the time-frame for the documents they would produce, but only regarding the MCS Plan from January 2006 to approximately January 2008.   Relator's counsel told Defendants' counsel that it could not accept Defendants' position because Relator's claims against Defendants are not limited to MCS and Puerto Rico, or to the time-period between January 2006 and January 2008.

The parties also met and conferred on June 13, 2013 regarding the formatting and schedule of the document production.   On June 24, 2013, Defendants began producing limited documents on a rolling basis, but only with respect to those documents that Defendants have unilaterally determined are relevant.[10]   Defendants still refuse to produce the documents that are the subject of this Motion – the actual false claims and the vast majority of documents related to the false–claims allegations this Court has already ruled were legally sufficient.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure allow for broad discovery into "any non-privileged matter that is relevant to any party's claim or defense," or, where cause exists, on any matter that is "relevant to the subject matter of the action." Fed. R. Civ. P. 26(b)(1).  Information is relevant to a case if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Courts within this Circuit have repeatedly stated that "relevancy is not limited to the precise issues set out in the pleadings." *Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc.*, No. 10-222, 2011 WL 239655, at *2 (E.D. Pa. Jan. 25, 2011) (citing *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *Belcher v. United States*, No. 03-1252, 2006 WL 2583453, at *2 (M.D. Pa. Sept. 6,. 2006) ("[D]iscovery requests may be

---

[10] By contrast, Plaintiff has produced to Defendants all non-privileged documents in his possession that are responsive to Defendants' First Set of Requests for Production.

deemed relevant if there is *any possibility* that the information [requested] may be relevant to the general subject matter of the action.") (quoting and citing reference omitted) (emphasis added). This Court has echoed these sentiments in stating that "it is well settled that Rule 26 establishes a fairly liberal discovery policy" and that "discovery is permitted of *any information* that is relevant or may lead to the discovery of relevant evidence." *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 100-01 (E.D. Pa. 2010) (Buckwalter, J.); *Johnson v. City of Philadelphia*, No. Civ. A. 94-1429, 1994 WL 612785 *12 (E.D. Pa. Nov. 7, 1994) (Buckwalter, J.).

The party objecting to the discovery must state the ground for the objection with specificity; the mere recitation that a document discovery request is "overly broad, burdensome, oppressive, and irrelevant" will not suffice. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *Haring v. Eckerd Corp.*, No. Civ. A. 01-3988, 2002 WL 32348343 *1 (E.D. Pa. May 16, 2002) (Buckwalter, J.); *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citations omitted); Fed. R. Civ. P. 33(b)(4).   Once an objection is raised, "the party seeking discovery must demonstrate the relevancy of the requested information." *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 57 (E.D. Pa. 1994).   "Once this showing is made, the burden switches again to the party opposing discovery to show why discovery should not be permitted." *Id.*

Pursuant to Fed. R. Civ. P. 37, the Court has enforcement power to ensure the parties' cooperation in the discovery process by allowing a party to move for an Order compelling production of documents.  Fed. R. Civ. P. 37(a)(3)(B).  For purposes of a Rule 37 motion, "an evasive or incomplete" disclosure is treated as a failure to answer.  *Id.* at 37(a)(4);  *see also Romero*, 271 F.R.D. at 101.

IV. **DEFENDANTS SHOULD BE COMPELLED TO PRODUCE THE REQUESTED DOCUMENTS, WHICH ARE DIRECTLY RELEVANT TO THE NATIONWIDE FALSE CLAIMS ALLEGATIONS THIS COURT HAS ALREADY SUSTAINED**

A. **Plaintiff's Requests Are Directly Relevant to the Nationwide False Claims Allegations This Court Has Already Sustained**

Defendants ignore this Court's Order by attempting to limit this case to the island of Puerto Rico for a third time, and withholding documents that are clearly relevant to the core allegations in this case. Each of the foregoing Requests relates to Defendants' practices, policies and procedures regarding their Concurrent Drug Utilization Review ("DUR") and the submission of PDE data to CMS. The documents Relator has requested are, as explained below, directly relevant to his nationwide allegations that Defendants, *inter alia,* submitted false claims to the United States and failed to perform the requisite Concurrent DUR as required by law.[11]

1. **Documents Regarding the PDE Claims Defendants Submitted to CMS and/or Part D Sponsors in Connection with the Part D Program, Which Are the Very False Claims at Issue in This Case (Requests 5, 6, 9, 10, 11, 20, 21, and 42)**

Requests 5, 9, and 10 seek the actual PDE data submitted by Defendants to CMS. The PDE data submitted by Defendants to CMS constitutes the very false claims at issue in this case. *Spay,* 2012 WL 6645537 at *35, n.29 ("[B]ecause submission of a PDE is a condition for any future payment, a PDE is a claim or demand for payment under the FCA").

Discovery of "claims data" is certainly relevant in this False Claims Act action. *U.S. ex rel. El-Amin v. George Washington Univ.,* 522 F. Supp. 2d 135, 145 (D.D.C. 2007) (to prove a violation of the False Claims Act, Relators necessarily have to "prove the content" of the false claim submitted to the government through the claim itself, if obtainable, or through reliable

---

[11] In the interest of brevity, Plaintiff does not list each Request to which Defendants have objected. Attached hereto as Ex. H is a chart summarizing Relator's requests, describing why the information sought is relevant,, Defendants' primary objection to each request and what they are willing to produce.

secondary evidence demonstrating the content of the false claims); *see also U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*, 565 F.Supp.2d 153, 160 (D.D.C. 2008) (evidence showing the submission of an actual claim to the Government is the "*sine qua non* of a[n] FCA violation.") (citing and quoting reference omitted).[12]

Similarly, Requests 6, 11, 20, 21, and 42 seek documents directly related to the false PDE claims that Defendants submitted to the Government.   For example, Request 6 seeks "[a]ll documents regarding the requirements of the submission of PDE data to CMS."   These documents, as well as those sought in Requests 11, 20, 21, and 42, are clearly relevant to proving: (1) that the PDE claims Defendants submitted were false; and (2) that Defendants knowingly submitted those false claims, in violation of the FCA.

### 2.   Documents That Refer to Practices, Policies and/or Procedures Utilized by Defendants in Processing Part D Claims (Requests 1, 3, 7, 8, 18, 34, 35, 36, 37, 39, 44, 45, and 60)

Requests 1, 3, 7, 8, 18,[13] 34, 35, 36, 37, 39, 44, 45 and 60 seek Defendants' practices, policies and/or procedures for processing and submitting to CMS and/or Part D Sponsors the Part D claims directly at issue in this case.   For example, Request 8 seeks: "All documents that set forth the procedures, policies, and/or instructions given to CVS/Caremark employees to use in

---

[12] Indeed, in most FCA cases, the relevant claims data lies in Defendants' possession. *See, e.g., U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009) ("In many cases, the defendants will be in possession of the most relevant records, such as patients' charts, doctors' notes, and internal billing records…").   As this Court explained, "Plaintiff cannot be expected to plead with particularity each and every false claim nationwide without the benefit of at least some discovery, *as such information rests solely within Defendants' control*. *Spay*, 2012 WL 6645537, at *42 (emphasis added).

[13] Request 18 seeks "all documents, including internal and external communications, relating to edits or changes created, considered and/or implemented by CVS/Caremark for all CVS/Caremark Part D Plans for which CVS/Caremark was contracted to provide PBM services…"   This Court has upheld Plaintiff's allegation that Defendants' nationwide claims adjudication system failed to have required edits in place to reject false PDE claims, including claims without valid prescriber identifiers and claims for gender specific drugs prescribed to the opposite gender.   *Spay*, 2012 WL 6645537 at *42 (citing FAC, ¶¶ 339-342).   Documents and communications relating to the edits Defendants had in place or considered implementing to identify and reject invalid claims are clearly relevant to proving that Defendants knowingly submitted false PDE claims on a nationwide basis.

submitting PDE data to CMS from January 1, 2006 through the present." These documents, which relate to Defendants' nationwide system and practices for processing and submitting the Part D claims at issue in this case, are clearly relevant to proving that Defendants:

- submitted false claims to the Part D Program by falsely certifying the truth and accuracy of PDE claims, and by failing to perform required DUR services;

- acted "knowingly," as defined under the FCA; and

- carried out their false claims act schemes on a nationwide basis. [14]

The Court's Memorandum and Order denying Defendants' Motion to Dismiss addresses this specific point. The Court stated:

> Plaintiff does not focus on particular fraudulent claims, but rather specific fraudulent practices, which he contends were carried out with respect to Defendants' contracts with other Part D Sponsors other than MCS. Based on the allegations in the Complaint, discovery on the scope of these broader practices will not create an undue burden on Defendants.

*Spay*, 2012 WL 6645537 at *41, n.32. Defendants' policies and procedures for processing and submitting the very PDE claims at issue are clearly relevant and should be produced to Plaintiff. *See e.g., U.S. ex rel. Minge v. Turbine Engine Components Technology Corp.*, No. 07–1212–MLB–KGG, 2011 WL 2607082 *1 (D. Kan. July 1, 2011) (allowing discovery of a False Claims Act Defendant's processes and practices relevant to Relator's theory of fraud); *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 190-92 (D.N.J. 2010) (granting Plaintiff's motion to compel discovery of Defendants' company-wide policies and procedures as relevant to allegations in Plaintiff's complaint).

---

[14] Defendants' policies regarding the submission of PDE claims are also directly relevant to their Fourth Affirmative Defense (Defendant acted in "good faith"), Fifth Affirmative Defense (Defendant did not act "knowingly"); Sixth Affirmative Defense (Defendants' Part D claims were not false).

3. **Contracts Between Defendants and Any Current Part D Plan and/or Downstream Entity Where Defendants Served as PBM and/or Contracts Between Defendants and Any Downstream Entity (Requests 12, 13, 15, and 16)**

Requests 12, 13, 15, and 16 seek information regarding Defendants' contracts with the Part D Plans and/or any Downstream Entities (including dispensing pharmacies), which this Court has noted are directly involved in the claims alleged to be false in this case. *See Spay*, 2012 WL 6645537 at *2 ("Part D Plan sponsors subcontract with many entities to provide drugs to the Medicare Part D beneficiaries enrolled in their plans, including subcontracts with pharmacy benefit managers."). For example, Request 12 seeks "Copies of all contracts, including all amendments, attachments, exhibits, riders, modifications and rescissions thereto, between and among CVS/Caremark and current or former Part D Plans wherein CVS/Caremark agreed to serve as PBM for the Part D Plan from January 1, 2006 through the present").

These documents, as well as those sought in Requests 13, 15, and 16, are relevant to, among other things:

> (1) identifying those Part D Plans for which Defendant submitted false PDE claims to the Government;
>
> (2) identifying the Downstream Entities, including the pharmacies that dispensed the prescription and sent data regarding that prescription to Defendants[15] – which in turn submitted the false PDE claims at issue;
>
> (3) proving that, like with MCS, Defendants agreed to perform "Concurrent DUR" and "data edit and quality control procedures designed to ensure accurate and complete prescription data" *Spay*, 2012 WL 6645537 at *5;
>
> (4) proving that, like with MCS, "Defendants had significant financial incentives for adjudicating claims and dispensing Part D Drugs" *Id.*;

---

[15] Dispensing pharmacies (many of which are also owned and operated by Defendants) receive the actual prescription written by the physician and dispense the medication to the beneficiary. *See Spay*, 2012 WL 6645537 at *2-4. The contracts governing these activities, as well as the Downstream Entities' agreement to transmit data to Defendants, are clearly relevant to the allegations in this case, including those regarding false physician identifiers and dispensing drugs with expired NDC numbers.

(5) proving that, like with MCS, Defendants specifically agreed that "[their] activities must, to the extent these are communicated to [Silverscript], be consistent and comply with [the Part D Sponsor's] contractual obligations to CMS as a Part D Plan Sponsor" *Id.*;

(6) proving that, like with MCS, Defendants' contracts with Part D Plan Sponsors specifically provided for "MAC pricing on certain Part D drugs" *Id.* at *23;

Defendants apparently concede that Defendants' contract with MCS is relevant to the claims and or defenses in the case, as they have agreed to produce the contracts regarding their relationship with MCS.  *See* Ex. D., Response to Numbers 12, 15, and 16.  This case, however, is not limited to MCS.  "Plaintiff does not focus on particular fraudulent claims, but rather specific fraudulent practices, which he contends were carried out with respect to Defendants' *contracts with other Part D Sponsors other than MCS.*"  *Id.* at *41, n.32 (emphasis added).[16]

### 4. Formularies and MAC Pricing Lists for Part D Plans for Which Defendants Submitted PDE Claims to the Government (Requests 17 and 19)

Requests 17 and 19 seek the Formularies and MAC Pricing Lists of all Part D Plans for which Defendants submitted PDE claims to the Government.  The Formularies sought directly relate to Relator's allegations that: (1) Defendants fraudulently permitted pharmacies to dispense drugs without the prior authorizations required by the Part D Sponsor's drug formulary; and (2) Defendant fraudulently failed to provide the negotiated MAC price.  *Spay*, 2012 WL 6645537 at *23 (noting that Federal Regulations require Part D Sponsors, and through contract PBM's, to "provide [their] Part D enrollees with access to negotiated prices for covered Part D drugs included in [their] Part D plan's formulary"); and at *32 (holding that, to the extent Defendants

---

[16] Additionally, Defendants contracts with Part D Sponsors and Downstream Entities are relevant to Defendants Nineteenth Affirmative Defense – which claims that third parties were responsible for the damages to the United States.  By asserting this Affirmative Defense, Defendants have opened the door to discovery of the contracts they had with the Part D Sponsors and Downstream Entities tied to the false PDE claims at issue in this case.  *Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, No. 01-2394, 2002 WL 1870452, at *4 (E.D. Pa. July 29, 2002).

were required to ensure prior authorization for certain drugs before dispensing them – as required in the Part D Plan's formulary – but did not do so, they "are subject to a worthless services claim"); FAC ¶¶ 300-305.  Similarly, the MAC Pricing Lists sought, which are defined in the Requests as "the maximum allowable costs or price that can be charged by the PBM to the Part D beneficiary," directly relate to Relator's allegations that Defendants fraudulently failed to provide the negotiated MAC price.  *See Spay*, 2012 WL 6645537 at *23 ("In short, by charging above MAC pricing, reporting such pricing on a PDE, and certifying the accuracy of that pricing, a PBM can be deemed to be submitted to the government a claim for payment that is false").

> **5. Documents or Communications Related to Any Audits Relating to Defendants' Activities in the Part D Program (Requests 22, 23, 24, 33, 41, 53, 59)**

Requests 22, 23, 24, 33, 41, 53 and 59[17] seek documents or communications regarding audits of Defendants' activities in the Part D Program, including those performed by Defendants, the United States Government, and any Part D Sponsors (similar to the MCS Audit).  For example, Request 22 seeks: "From January 1, 2006 to the present, all documents or communications related to any audits performed by or on behalf of any Part D Plan Sponsor for which CVS/Caremark provided PBM services."

These audit documents, including those sought in Requests 23, 24, 33, and 41, are directly relevant to proving, among other things: (1) Defendants' submission of false PDE claims

---

[17] Relator's Request 59 seeks documents and communications related to other obstructive activities Defendants may have taken with respect to other audits of Defendants' Part D activities.  Documents which relate to Defendants' obstructive behavior with Part D audits are probative of Defendants' fraudulent practices. *See Hovind v. Comm'r*, 104 T.C.M. (CCH) 400, T.C. Memo. 2012-281, at *15–16 (T.C. 2012) (noting, in context of tax fraud, that failure to cooperate with auditors is circumstantial evidence of fraud); *see also United States v. Meling*, 47 F.3d 1546, 1551 (9th Cir. 1995) (stating, in criminal case, that "the government presented circumstantial evidence of Meling's guilt, including . . . attempts to obstruct the investigation."). Again, in the present case, Relator has alleged that Defendants shut-down Pharm/DUR's audit of Defendants' activities in Puerto Rico.  FAC, ¶¶ 264-66.

occurred, as alleged in the FAC, on a nationwide basis[18]; (2) Defendants' understanding of the requirements of the Part D Program; and (3) Defendants acted knowingly in submitting false PDE claims to the government.   *See, e.g.*, *U.S. ex. rel. Sanders v. Allison Engine, Co.*, 196 F.R.D. 310, 311, 315 (S.D. Ohio 2000) (compelling defendants in False Claims Act case to produce internal audits because information could establish defendants' non-compliance with their contractual obligations, and therefore information directly relevant); *U.S ex rel. Falsetti v. Southern Bell Tel. and  Tel. Co*., 915 F.Supp. 309, 309, 315 (N.D. Fla. 1996) (granting Relator's motion to compel discovery of Defendant's internal audits).   Courts have also held that similar types of documents, such as internal–inspection reports and peer–review documents, regarding the allegations in a Complaint are relevant and discoverable.  *See Davidson v. Light*, 79 F.R.D. 137, 140 (D. Colo. 1978) (internal report prepared by defendants' internal committee pertaining to allegations in complaint was relevant and discoverable); *Syposs v. United States*, 179 F.R.D. 406, 409–12 (W.D. N.Y. 1998) (peer reviews relevant and discoverable).[19]

---

[18] Defendants are aware that audits which are the subject of these Requests were actually performed.  For example, Relator's former company, Pharm/DUR, performed a subsequent audit in 2009 of another Part D Sponsor for which Defendants served as the PBM.  That audit, which reviewed claims submitted in 2007, exposed many of the same problems identified in the MCS audit.  The documents regarding this subsequent audit have been produced to Defendants and are attached hereto as Ex. I, which has been filed under seal.

Similarly, as an example of audits performed by the Government, the United States Department of Health and Human Services, Office of Inspector General, released: (1) a report in January 2010 entitled "Review of Silverscript Insurance Company's Internal Controls to Guard against Fraud, Waste and Abuse for the Medicare Part D Program;" and (2) a report in January 2012 entitled "Review of Controls at Silverscript Insurance Company to Ensure Adherence to Formularies."

[19] Additionally, these audit documents are relevant to Defendants' Affirmative Defenses, since they repeatedly allege that they acted appropriately and with no mal-intent at all relevant times.  *See, e.g.*, Defendants' Fourth, Fifth, and Sixth Aff. Def.  Moreover, the documents related to audits performed by the Government are relevant to Defendants' Twelfth, Thirteenth, and Fourteenth Affirmative Defenses, in which they alleged that they should not be held liable under the False Claims Act because: (1) the United States is estopped from seeking any relief under the False Claims Act as to their fraudulent practices; (2) the United States' knowledge of their fraudulent practices defeats the elements of falsity, scienter, materiality, and causation; and (3) the United States approved and ratified Defendants' practices.

### 6. Documents related to Part D Plan Funds Received by Defendants or a Related Entity (Request 40)

Request 40 seeks documents related to Part D Plan funds received by Defendants or a "Related Entity."[20]   This Request clearly relates to the very basis of Relator's Amended Complaint – that Defendants billed and received funds from the Part D Program for services which were not provided and for false PDE claims that Defendants falsely certified as true and accurate.  *Spay*, 2012 WL 6645537 at *5[21], *22, *33.  The documents sought are relevant to, among other things, proving liability and the damages that Defendants' false claims caused the Government.[22]   *See U.S. ex rel. Fry v. Guidant Corp*, No. 3:03-0842, 2009 WL 3103836, at *2 (M.D. Tenn. Sept. 24, 2009) (finding that cost reports which formed the basis of a False Claims Act action were clearly relevant to determining both liability and damages and were thus discoverable).

### 7. Documents Related to Any and All Bids, Proposals, Quarterly-Yearly Reports, or Plan Specifications Submitted by Defendants to the Government (Requests 14 and 32)

Requests 14 and 32 seek any and all documents related to any bids, proposals, quarterly-yearly reports, applications or plan specifications submitted by Defendants to the Government.

---

[20] The term "Related Entity" is defined in the Requests as "an entity that is related to the Part D Sponsor by common ownership or control and either performs some of the sponsor's management functions under an agreement, contract or delegation, furnishes services to Medicare enrollees under oral or written agreements, or certain lease arrangements with the sponsor (i.e., where a sponsor is the parent company of its own in-house PBM.). 42 C.F.R. § 423.501.

[21] As stated in this Court's Opinion denying Defendants' Motion to Dismiss, "Defendants had significant financial incentives for adjudicating Part D claims and Part D drugs," which include: (1) "administrative fees per paid retail and mail order/on-line claim;" (2) "a dispensing fee only if the prescription was billed and dispensed to the Part D participant through Caremark's retail pharmacy network;" and (3) "additional incentives through their Caremark and CVS-owned mail order and retail pharmacies." *Spay*, 2012 WL 6645537 at *5.

[22] Additionally, documents regarding the funds that Defendants received in connection with the alleged false claims are relevant to Defendants' Sixteenth and Seventeenth Affirmative Defenses ("Plaintiff's claim for damages are barred because the United States has not suffered, and it will not suffer, any damages or injury to any legally protected or cognizable interest by reason of the conduct of Defendants").

This Court has noted that such "bids" submitted to the government "contain a per member per month cost estimate for providing Part D benefits," and are used by CMS to determine the amount the government and beneficiary pay for Part D services. *Spay*, 2012 WL 6645537 at *2. In terms of the yearly reports, otherwise referred to as annual reconciliations, this Court upheld the allegation that "MCS and/or the CVS Caremark Defendants have submitted annual reconciliations since 2006 without revealing the thousands of improperly adjudicated Medicare Part D claims which, therefore, contained false PDE data and constituted false claims." *Id.* at *39, citing FAC ¶¶ 372-74.

These documents are therefore directly relevant to proving: (1) the content of the representations that Defendants submitted to the United States about the costs of the Part D services at issue in this case; (2) Defendants' scienter regarding Relator's central allegations – including whether Defendants submitted and received payment for services they did not provide; and (3) proving the damages in the case. *Spay*, 2012 WL 6645537 at *28. The bids, proposals, and reports that Defendants submitted to the Government are also relevant to the allegations that Defendants violated Section 3729(a)(2) of the FCA, which imposes liability on anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2).[23]

---

[23] Moreover, the bid documents submitted to the Government are relevant to Defendants' Affirmative Defenses. *See* Thirteenth Aff. Def. ("Plaintiff's claims are barred because the United States' knowledge of the alleged conduct in the Amended Complaint and/or acquiescence of such conduct defeats the elements of falsity, scienter, materiality, causation, and precludes all damages in this action"), Fourteenth Aff. Def. ("The United States directed, ordered, approved, acquiesced or ratified Defendants' conduct, and the United States, is therefore, barred from asserting any claims based thereon"), and Eighteenth Aff. Def. ("The United States did not rely on the alleged statements, actions, or inactions of Defendants complained of in the Amended Complaint…").

**8.   Documents Regarding Defendants' Compliance Programs, Policies and Procedures Regarding the Part D Program (Requests 30, 31, and 38)**

Requests 30, 31, and 38[24] seek documents regarding Defendants' compliance program, policies and procedures regarding the Part D Program.  Information about compliance programs, policies and procedures is itself discoverable, and it could also lead to the discovery of evidence regarding whether a party complied with its own policies and procedures.  *See Robertson v. Allstate Ins. Co.*, No. CIV.A. 98-4909, 1999 WL 179754, at *6 (E.D. Pa. March 10, 1999); *Fleming v. Mountain States Health Alliance*, No. 1:11cv00050, 2012 WL 1909343 *5 (W.D. Va. May 25, 2012); *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 190-92 (D.N.J. 2010).  If, for example, Defendants violated their own procedures in submitting false claims to the government, the failure to follow corporate protocol would be "probative" of whether Defendants acted knowingly or recklessly in submitting false claims.  *Id.*; *see also U.S. ex rel. Minge v. Turbine Engine Components Technology Corp.*, No. 07–1212–MLB–KGG, 2011 WL 2607082 *1 (D. Kan. July 1, 2011) (allowing discovery of Defendants' processes and practices because these were relevant to Relator's theory of fraud).  Such evidence would thus aid Relator in his case-in-chief and in refuting Defendants' Affirmative Defenses. *See, e.g.*, Defendants' Fourth, Fifth, and Sixth Aff. Def.

---

[24] Request 38 seeks documents related to Defendants' "document retention policies."  These policies are relevant to Defendants' scienter, as well as their Affirmative Defenses.  *See* Defendants' Nineteenth Aff. Def. – which claims that third parties were responsible for the damages to the United States.  Moreover, Defendants generally object to all of Plaintiff's Request for Production on the basis that it would be unduly burdensome for them to search for "electronically stored information that is not readily accessible due to cost or burden, including without limitation, the discovery of information stored on or comprising back-up tapes, legacy systems, or erased, fragmented, or damaged data." Ex. D, p. 3-4.  Defendants have not identified which documents are impacted by this objection.  Nor have they offered any support whatsoever for their claim that certain, unspecified documents are not "readily accessible."  Defendants' objection places their document retention policies at issue in this case.

### 9. Documents Relating to Defendants' Efforts to Comply With State Pharmacy Codes and Regulations Regarding the Identified Areas of Fraud in the FAC (Requests 55, 56, 57, and 58)

Requests 55, 56, 57, and 58 seek documents regarding Defendants' efforts to comply with State Pharmacy Codes and Regulations regarding: (1) expired, terminated or obsolete drugs; (2) gender specific contraindications for prescription drugs; (3) obtaining prescriber identification for prescription drugs; and (4) prior authorizations for prescription drugs. These Requests are focused on specific areas of fraud identified in the FAC, which this Court has already upheld. *See, e.g., Spay*, 2012 WL 6645537, at *26, *28, *33. Documents relating to Defendants' efforts to comply with State pharmacy Codes and Regulations are probative of Defendants' scienter, as they would show whether: (1) Defendants knew that they were violating these Codes and Regulations, or (2) recklessly ignored them. For this reason, these documents also relate to Defendants' Fifth Affirmative Defense that they did not act "knowingly".

### 10. Documents and Internal and External Communications Relating to Specific Areas of Fraud Identified in the FAC (Requests 25, 26, 27 and 28)

Requests 25, 26, 27, and 28 seek documents and internal and external communications related to specific areas of fraud identified in the FAC, namely:

- prior authorization requirements for Part D Plans (Request 25);

- pricing for any Part D Plan, including whether or not to apply MAC pricing for drugs eligible for MAC pricing (Request 26);

- processing of claims for gender specific drugs (Request 27); and

- limits of the amount of medication based upon listed quantities or days supply that can be dispensed for any CVS/Caremark Part D Plan or for which CVS/Caremark provided PBM services (Request 28).

These Requests are narrowly focused on specific areas of fraud identified in the FAC, which this Court has already upheld. Documents and communications in Defendants' possession

18

regarding the core allegations of fraud at issue in this case are clearly relevant to Plaintiffs' case-in-chief (as they are probative of whether Defendants knowingly submitted, or caused the submission of, false PDE claims on a nationwide basis), as well as to Defendants' myriad Affirmative Defenses (including Defendants' claims that they acted with no mal-intent).

### B. Defendants Have No Legitimate Basis for Refusing to Produce Nearly All of the Documents Sought by Plaintiffs

Defendants have flatly refused to produce nearly all of the documents sought by Plaintiff in his Requests. Through a laundry-list of vague and baseless objections, Defendants have proclaimed that, for most of Plaintiff's Requests, they will only produce documents related to MCS. Defendants have further refused, in response to all of Plaintiff's Requests, to produce any documents beyond calendar year 2006.[25] Moreover, for 16 of the Requests, Defendants have categorically refused to produce any documents at all.

Defendants are now attempting through discovery to do that which this Court has already rejected three times – namely to limit this case to one Part D Plan (MCS) and to one year (2006). This Court, in denying Defendants' Motion to Dismiss, clearly ruled that this case involves allegations that Defendants submitted false claims to the Medicare Part D Program on a nationwide basis. Relator is entitled, under Fed.R.Civ.P. 34, to discovery on these nationwide fraud claims. Defendants have no legitimate basis for withholding nearly all of the documents regarding the nationwide fraud claims at issue in this case.

### 1. Defendants Have No Legitimate Basis for Refusing to Produce Documents Beyond the MCS Plan In Puerto Rico

In response to Requests 1, 3, 5, 7–12, 15–17, 19–22, 25–28, 34–37, 39–40, 42–45, 48–50, and 60, Defendants have refused to produce any documents beyond the MCS Plan in Puerto

---

[25] During the Meet and Confer, Defendants' new counsel advised Relator's counsel that they were willing, for the MCS Plan only, to documents from 2006 through approximately January 2008. In all other respects, Defendants have refused to produce any documents beyond calendar year 2006.

Rico. *See* Ex D. Defendants are therefore withholding such documents as: (1) all of the alleged false PDE claims beyond those for the MCS Plan; (2) all of Defendants' policies and procedures for the Part D Plan beyond those for the MCS Plan; (3) all contracts, MAC Pricing Lists, Formularies, bids, reconciliations, and statements to the government beyond those for the MCS Plan; and (4) all documents and communications regarding the specific areas of fraud in this case beyond those for the MCS Plan. In short, Defendants have unilaterally withheld virtually every document regarding the fraud allegations in this case beyond those for the MCS Plan.

By failing to provide information beyond the scope of the MCS audit, Defendants effectively refuse to acknowledge this Court's prior Ruling. Instead, Defendants rehash their argument that Relator has failed to adequately plead a nationwide fraudulent scheme, and as such, should not be afforded nationwide discovery. In their Motion to Dismiss papers, Defendants contended that Relator's nationwide allegations are based on "nothing more than speculation." Defendants' Memorandum of Law in Support of Motion to Dismiss, (Dkt. No. 45), at 29. Defendants argued that Relator's nationwide allegations should be dismissed for failure to comply with Rule 9(b) and that Relator thus should not be allowed discovery on his nationwide allegations. *Id*.

The Court flatly rejected Defendants' argument and stated as follows:

> [A]llowing full discovery to proceed in the present case would not result in any . . . 'fishing expedition.' As noted, Plaintiff does not focus on particular fraudulent claims, but rather specific fraudulent practices, which he contends were carried out with respect to Defendants' contracts with other Part D Sponsors other than MCS. Based on the allegations of the Amended Complaint, discovery on the scope of these broader practices will not create an undue burden on Defendants.

*       *       *

> Taking [Relator's] well-pled allegations as true, the Court finds a strong inference that Defendants submitted false claims nationwide.  Indeed, the sheer number of claims indentified by Plaintiff in at least three states and Puerto Rico suggests, without need for speculation, that Defendants' reporting practices likely occurred at Defendants' other facilities throughout the country.  Certainly, Plaintiff cannot be expected to plead with particularity each and every false claim nationwide without the benefit of at least some discovery, as such information rests solely within Defendants' control.

*Spay*, 2012 WL 6645537, at *41 n.32; *29 ("Ultimately, only discovery will tell whether Defendants' alleged failures constituted 'worthless services,' whether they were simply isolated instances of noncompliance among 'billions' of prescriptions filled per year, or whether the alleged failures caused any loss to CMS").[26]

It is axiomatic that "[p]laintiffs are entitled to discovery regarding the factual allegations stated in their complaint." *In re iPhone/iPad Application Consumer Privacy Litig.*, No. 11-MD-2250-LHK, 2012 U.S. Dist. LEXIS 166711, at *23 (N.D. Cal. Nov. 21, 2012); *see also Denny v. Carey*, 72 F.R.D. 574, 578 (E.D. Pa. 1976) ("[O]nce plaintiff has satisfied the minimum burden of Rule 9(b), plaintiff should be allowed to flesh out the allegations in the complaint through discovery") (citing references omitted).   Courts have repeatedly held once a Relator has adequately pled a nationwide scheme, he is entitled to nationwide discovery.  *See e.g., U.S. ex. rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.,* 238 F. Supp. 2d 258, 268 (D.D.C. 2002) (finding nationwide allegations were sufficiently pled and finding that "where a complaint covers a multi-year period, Rule 9(b) may not require a detailed allegation of all facts supporting each and every instance of submission of a false claim"); *U.S. ex rel. Fry v. Guidant Corp.,* 2007 U.S.

---

[26] In its Opinion striking many of Defendants' Affirmative Defenses, this Court again stated: "*At the core of the Amended Complaint*, filed on August 5, 2011, is the allegation that Defendants violated the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), in their roles as both a Pharmacy Benefits Manager ("PBM") and a Sponsor of the Medicare Part D Prescription Drug Program ("Part D Sponsor"), by *engaging in a nationwide practice* of fraudulently adjudicating and submitting improper Prescription Drug Event ("PDE") claims to the Center for Medicaid and Medicare Services ("CMS") under the Part D Program." *U.S. ex rel. Spay v. CVS Caremark Corp.*, 09-4672, 2013 WL 1755214, at *1 (E.D. Pa. April 24, 2013) (emphasis added).

Dist. LEXIS 88494, at *6-7 (M.D. Tenn. Nov. 30, 2007).   The Court in *Fry* specifically addressed and rejected the position that Defendants now raise here:

> Defendant Guidant objects to the nationwide scope of relator's document requests. Guidant suggests that it should produce documents relating to Patients A through E and the three hospitals named in the Second Amended Complaint. Relator and the government assert that their claims are based upon defendant Guidant's *practices nationwide and that they are entitled to obtain pertinent discovery unless or until such claims are dismissed or otherwise limited geographically. The undersigned agrees that the Second Amended Complaint asserts claims nationwide, and that until these claims are dismissed or otherwise limited they are appropriate subjects of discovery pursuant to Rules 26 and 34*. Accordingly, defendant Guidant's objection based upon geographic scope is overruled.

*Fry,* 2007 U.S. Dist. LEXIS 88494, at *6-7 (emphasis added).

As in *Fry*, Relator's claims are based on Defendants' "practices nationwide," and therefore, Relator should be entitled to nationwide discovery.  Defendants cannot unilaterally limit the scope of the discovery in this case, nor have they met their burden that Relator's Requests are not relevant and/or unduly burdensome.   A defendant may not "at the discovery stage determine what documents it will produce by referring to its arguments regarding the merits of the case. . . . By limiting its responses to information supporting its theory of the case, [a defendant] would impermissibly skew the evidence Plaintiffs can use to build their case."  *In re iPhone/iPad Application Consumer Privacy Litig.*, 2012 U.S. Dist. LEXIS 166711, at *22.

This is precisely what Caremark Defendants seek to do in this case.   Moreover, Defendants narrow even further the limited documents they are willing to produce to only documents reflecting Silverscript's[27] practices, policies and procedures.  *See* Ex. D, Defendants' Responses to Requests 1, 3, 5, 7–12, 15–17, 19–22, 25–28, 34, 39–40, 42, 44, 48–50, and 60.   Nowhere in

---

[27] From before January 1, 2006 through March 22, 2007, Silverscript was a wholly-owned subsidiary of Defendant Caremark Rx.  Silverscript is now a wholly-owned subsidiary of Defendant CVS Caremark.  Since 2006, Silverscript has provided PBM services to Part D Plan Sponsors throughout the country.

Relator's First Amended Complaint does he limit Defendants' fraudulent practices to Silverscript.  *See* Relator's First Amended Complaint ¶¶ 1, 54-55, 363-369.  Nor did this Court limit discovery to Silverscript.  *See Spay*, 2012 WL 6645537, at *41-42.  Rather this Court held that Relator should be provided "full discovery" as to the scope of Defendants' nationwide practices. *Id.* at *41-42, 56.

Accordingly, this Court should overrule Defendants' objections regarding the scope of discovery and compel Defendants to provide full and complete responses to Relator's Requests numbered 1, 3, 5, 7–12, 15–17, 19–22, 25–28, 34–37, 39–40, 42–45, 48–50, and 60.

### 2. Defendants Have No Legitimate Basis for Refusing to Produce Documents Beyond Calendar Year 2006

Defendants' inappropriate attempt to limit this case to the MCS Plan is exacerbated by their blanket refusal, in response to all of Plaintiff's Requests, to produce any documents beyond 2006.   In their Responses, Defendants claim that discovery should be limited to 2006 because: (1) that is the year addressed by the MCS audit; and (2) the Court somehow determined in his Opinion and Order denying Defendants' Motion to Dismiss that discovery is limited to 2006 only.  *See* Ex. D, General Objection Number 5, at 3 ("The relevant timeframe for discovery in this action is the calendar year 2006 – the only year addressed by the audit on which the Amended Complaint is based, particularly given that this Court found that the Amended Complaint's allegations regarding continuing activity beyond 2006 are "cursory" and not pleaded with the required specificity.") (citing footnote 14[28] of the Court's Opinion).[29]

---

[28] Footnote 14 of the Court's Opinion addressed Plaintiff's allegations regarding inaccurate identification of the gender of Medicare beneficiaries in the PDEs.  Relator assumes that Defendants intended to cite to footnote 30 of the Court's opinion, which addressed application of Fraud Enforcement Recovery Act ("FERA") Amendments at the Motion to Dismiss stage of the litigation.

[29] Defendants modified this objection during the parties' meet-and-confer teleconference stating that, for the MCS Plan only,  they would produce documents from January 1, 2006 through January 2008 – the time period

Defendants' objection to the production documents that post-date the period of the MCS audit is untenable.  Indeed, if Defendants' position had merit, any defendant could effectively evade and limit its FCA liability by refusing to produce documents where its fraud continued for years beyond the time-period when its fraud was first detected.

### a. Plaintiff's First Amended Complaint Plainly Alleges that Defendants Fraud Extended Beyond 2006

Plaintiff's FAC focuses on the breadth and scope of Defendants' fraudulent practices, which Plaintiff contends were carried out on an ongoing basis with Defendants' contracts with Part D Sponsors nationwide.  *See* First Amended Complaint ("FAC") ¶¶ 3, 143, 323, 339-43. The FAC also alleges that "the CVS Caremark Defendants continue to submit false or fraudulent PDE data to CMS" and that Defendants' fraudulent practices continue to cause Federal health insurance programs to "pay false or fraudulent claims related to Part D prescription drugs . . . ." *Id.*  ¶¶ 2, 3, 323.  Plaintiff alleged that Defendants' fraudulent practices occurred nationwide and have been ongoing since 2006, rather than limited to the MCS Contract and its particular time period.  FAC ¶¶ 2, 3, 143, 323, 339-43.

The Court acknowledged this fact in its Opinion denying Defendants' Motion to Dismiss, when it expressly stated "Plaintiff does not focus on particular fraudulent claims, but rather *specific fraudulent practices.*" *Spay*, 2012 WL 6645537, at *41, n.32 (emphasis added).[30]  The Court drew this distinction in rejecting Defendants' argument that discovery should be limited to Puerto Rico and the allegations regarding MCS merely because those allegations were the

---

of the contract between Pharm/DUR and MCS.  Nonetheless, Defendants' position is still untenable because Relator's allegations exceed the scope of the MCS audit.  *Spay*, 2012 WL 6645537, at *41, n.32

[30] In its Opinion denying Defendants' Motion to Dismiss, the Court cited to Paragraph 323 of the FAC when stating that "…the Amended Complaint alleges that *during the relevant time period*, Defendants regularly and knowingly submitted false or fraudulent PDE data items to CMS." *Id.* at 14 (emphasis added).  Paragraph 323 of the FAC plainly defines the relevant time period when it alleges that "the CVS Caremark Defendants continue to submit false or fraudulent PDE data to CMS in the very same manner as described herein."  FAC ¶ 323.

subject of the audit upon which Plaintiff's allegations were based.  The Court specifically stated as follows:

> Defendants also . . . argue that if this Court allows the specified claims of fraud to proceed, then discovery should be limited to such claims and should not yet be expanded to the nationwide claims of False Claims Act violations . . . As noted, Plaintiff does not focus on particular fraudulent claims, but rather specific fraudulent practices, which he contends were carried out with respect to Defendants' contracts with other Part D Sponsors other than MCS.  Based on the allegations of the Amended Complaint, discovery on the scope of these broader practices will not create an undue burden on Defendants.

*Id.*

Defendants essentially rehash the same argument, now claiming that discovery should be limited to 2006 alone because that was the one-year addressed in the MCS audit.  This Court has already addressed and rejected Defendants' effort to limit the scope of this case to the MCS audit.  Defendants' latest attempt to re-litigate this issue should be rejected.  They should not be permitted to withhold critical evidence of their ongoing, nationwide fraudulent practices that are the core of the FCA allegations in this case.

Furthermore, Relator's company, Pharm/DUR, performed a subsequent audit in 2009 of another Part D Sponsor for which Defendants served as the PBM.  That audit, which reviewed claims submitted in 2007, exposed many of the same problems identified in the MCS audit.[31] The 2009 audit demonstrates that Defendants continued after 2006 to employ the very same fraudulent company-wide practices unearthed in the MCS audit.  The 2009 audit thus lends further support to Relator's well-pled allegations of an ongoing scheme to defraud the

---

[31] The subsequent audit findings have been produced to Defendants and are attached hereto as Ex. I, which has been filed under seal.

government; and it underscores the importance of compelling Defendants to produce documents beyond 2006.[32]

### b. This Court Did Not Limit the Fraud Allegations in this Case to 2006

Contrary to Defendants' baseless assertion, the Court placed no restrictions whatsoever regarding the scope and timing of discovery in its Opinion denying Defendants' Motion to Dismiss. Footnote 30 of the Court's Opinion focuses solely on whether the FERA Amendments to the False Claims Act should be applied at the motion–to–dismiss stage of the ligation. *Spay*, 2012 WL 6645537, at *36, n.30. Footnote 30 makes no reference whatsoever to the scope of discovery in this case. Indeed, as described above, the Court found that "*full discovery should proceed*" with regard to the "*specific fraudulent practices*" described in the FAC. *Id.* at *41, n.32. Further, Defendants submitted a proposed Scheduling Order/Discovery Plan suggesting that discovery be limited solely to calendar year 2006, but the Court correctly declined to issue an Order to that effect.

### c. Rule 9(b) is a Pleading Standard, Not A Limitation on Discovery

Defendants' reliance on Federal Rule of Civil Procedure 9(b) is misplaced. Rule 9(b)'s requirement to plead fraud with particularity is a pleading rule, not a limitation on discovery and not the standard for determining the scope of discovery. *See Rorer Int'l Cosmetics, Ltd. v. Halpern,* 85 F.R.D. 43, 45 (E.D. Pa. 1979) (noting that the policies underlying Rule 9(b)'s particularity requirement are inapplicable once a plaintiff demonstrates some specific basis for his fraud charges, and permitting discovery of information relating to alleged kickbacks even where the Complaint contained no allegations of kickbacks); *Fein v. Numex Corp.*, 92 F.R.D. 94,

---

[32] Moreover, Defendants have not asserted, let alone offered any proof, that they abandoned, at the end of 2006, their nationwide practices which are alleged in this case to have violated the FCA.

97 (S.D.N.Y 1981) ("Rule 9(b) tests only the sufficiency of pleadings and not the perimeters [sic] of discovery"); *U.S. ex. rel. Roberts v. QHG of Indiana, Inc.*, No. 1:97-CV-174, 1998 WL 1756728, at *9–10 (N.D. Ind. Oct. 8, 1998) (granting Relator's motion to compel and allowing discovery regarding Defendants' fraudulent billing practices beyond the length of the statute of limitations); *Securities and Exchange Comm'n. v. Wall Street Capital Funding, LLC, et. al.*, No. 11-20412, 2011 WL 2295561, at *5 (S.D. Fla. June 10, 2011) ("Rule 9(b)'s directive to plead fraud with particularity is a pleading rule, not a limitation on discovery ….").

### d. The Court has Already Ruled that Relator's Nationwide Allegations Satisfy Rule 9(b)

As set forth fully above, courts have repeatedly held that once Rule 9(b) is satisfied, a Relator is entitled to full discovery. *See, e.g., Pogue*, 238 F. Supp. 2d at 268; *Fry,* 2007 U.S. Dist. LEXIS 88494, at *6-7. However, even assuming that Rule 9(b) is the appropriate standard (which it is not), Relator is not required to plead each and every instance of the submission of a false claim. *United States ex. rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 308 (3d Cir. 2011) ("[W]e never have held that a plaintiff must identify a specific claim for payment at the pleading stage of the case to state a claim for relief."); *United States ex. rel. Landsberg v. Argentis Medical, P.C.*, No. 2:03-CV-1263, 2006 WL 1788381, at *4 (W.D. Pa. June 27, 2006) ("Particularly in the context of False Claims Act cases, the courts have recognized the impracticality of requiring the plaintiff to plead the facts of each individual claim, particularly where claims are numerous and extend over the course of several years"); *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1126 (E.D. Pa. 1991) ("Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud. Its purpose was to prevent general allegations of fraud that did not give defendants fair notice of the charges against them.").

Defendants have fair notice of Relator's claims.  As stated by this Court,

> Indeed, the sheer number of claims indentified by Plaintiff in at least three states and Puerto Rico suggests, without need for speculation, that Defendants' reporting practices likely occurred at Defendants' other facilities throughout the country.  Certainly, Plaintiff cannot be expected to plead with particularity each and every false claim nationwide without the benefit of at least some discovery, as such information rests solely within Defendants' control.

*Spay*, 2012 WL 6645537, at *42.

Defendants, however, inexplicably refuse to provide Relator with any discovery regarding their other facilities throughout the country, and for any claims that post-date the time of the MCS Audit.  Defendants' refusal to provide any information that post-dates the time and scope of the MCS audit is rather ironic.  Here, because of Caremark Defendants' "obstructive actions," "Pharm/DUR was unable to fully complete the desk or on-site audits of many of the MCS retail pharmacies, or to conduct the audits of mail order facilities as requested by MCS, the Part D Sponsor."  *Spay*, 2012 WL 6645537, at *6.  Defendants' obstruction also lends further support to Plaintiff's allegation of continuing fraud – if Defendants planned on changing their fraudulent practices, why would they prevent Plaintiff from continuing to examine their work?

Furthermore, if Defendants' position were accurate, a plaintiff would never be entitled to discovery beyond the bounds or time-frame of his own particular knowledge – even if the defendant continued his fraud well beyond the date of the filing of the action, and even if the defendants continued to engage in that very same fraud during the pendency of the litigation.  In other words, a defendant would be shielded from greater liability in any such suit, and would avoid liability for any additional fraud because a complaint had been filed.

That is not the law.  *See e.g., United States v. Torrance*, 164 F.R.D. 493, 495–96 (C.D. Cal. 1995) (the United States was entitled to discovery from defendant regarding information

after the Complaint was filed where the complaint alleged ongoing misconduct); *Dart Drug Corp. v. Corning Glass Work*, 480 F. Supp. 1091, 1107 (D. Md. 1979) (granting plaintiff's motion to compel discovery materials produced after the filing of Complaint because materials were relevant to plaintiff's claims); *Carlson Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1102 (D. Minn. 1973) (where documents requested are relevant to the subject matter involved in pending litigation, any documents coming into existence after the filing of complaint and which are requested in supplemental requests are discoverable, especially where complaint alleged continuing violations).

### e. Information Post-Dating 2006 Is Also Relevant to Defendants' Affirmative Defenses

In addition, information spanning the relevant time period of January 2006 through the present is also relevant to Defendants' Affirmative Defenses in this case, which Defendants fought to maintain in their Opposition to Relator's Motion to Strike.  This Court has noted that a plaintiff is entitled to discovery pertaining to a defendant's alleged defenses *and* that "[b]y raising a defense, a party opens the door to the discovery concerning that defense." *Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, No. 01-2394, 2002 WL 1870452, at *4 (E.D. Pa. July 29, 2002) (quoting and citing reference omitted).  Defendants raise a number of Affirmative Defenses alleging that they acted appropriately and with no mal-intent at all relevant times.  *See, e.g.*, Defendants' Fourth, Fifth, and Sixth Affirmative Defenses.  For example, Defendants' Fourth Affirmative Defense alleges, *inter alia*, that Defendants "acted at all relevant times in good faith and not with any improper or illegal purpose, intent or knowledge."  Defendants' post-2006 conduct, and information evidencing that conduct, are certainly relevant regarding whether – as Defendants put it – they acted *at all relevant times* in good faith and with no knowledge regarding the illegality of their actions.

Indeed, Defendants themselves have already relied on materials and documents that post-date 2006 in defense of this action.  In their Memorandum of Law in Support of their Motion to Dismiss, Defendants cited to a number of CMS and HHS-OIG reports from 2009 and 2010.  In particular, Defendants cited to an HHS-OIG report dated June 2010 and a CMS memorandum dated May 2009 to support their defense that the prescriber identifier field of the PDE is not a data element used for payment.  *See* Defendants' Memorandum of Law in Support of Motion Dismiss, at 11.  Defendants also cited CMS and HHS-OIG materials from 2009 and 2010 to support their defense regarding expired National Drug Codes and Plaintiff's alleged failure to plead a reverse false claim.  *Id.* at 15, 25.  It is disingenuous for Defendants to themselves rely on information that post-dates 2006, while at the same time advocating that Plaintiff should not be entitled to information during that same time period.

Defendants have not offered a legitimate basis for their refusal to produce documents that post-date the MCS audit time period.  As set forth fully above, Defendants' position runs contrary to this Court's prior Order, and well-established Rule 9(b) precedent that a Relator need not attach specific claims to the Complaint in a False Claims Act case.  Defendants improperly seek to redefine the scope of this Court's prior Order, and to re-write Third Circuit law which states specifically that a plaintiff need not attach the specific false claims at issue to satisfy Rule 9(b) or to be entitled to relevant discovery– especially because those claims most often lie in the Defendants' possession.  Accordingly, Defendants' objection to the relevant time period should be overruled, and this Court should compel Defendants to provide full and complete Responses to Relator's Requests.

### 3. This Court Should Compel Defendants to Produce All Responsive Documents to Those Requests to Which Defendants Refuse to Provide Any Documents

In response to Requests 13, 14, 18, 23–24, 30–33, 38, 41, 53, and 55–59, Defendants have refused to produce any documents at all. *See* Ex D.  Defendants are therefore withholding such documents as:

- all contracts, between Defendants and any Downstream Entities, including Defendants own mail order drug processing facilities which filled many of the alleged false PDE claims at issue in this case;

- all bids and proposals related to the Part D Program that Defendants submitted to the Government;

- all documents and communications regarding edits to Caremark's nationwide Part D claims adjudication system;

- Defendants' compliance plans, policies and procedures for the Part D Program;

- all documents and communications regarding audits relating to Defendants' activities in the Part D Program, including those performed by Defendants, and the United States Government; and

- all documents related to Defendants' efforts to comply with State Pharmacy Codes and Regulations regarding the specific areas of fraud at issue in this case.

Defendants are withholding all responsive documents based on the vague, wholly unsubstantiated claim that these Requests are "neither relevant nor reasonably calculated to the discovery of relevant, admissible evidence," "overbroad and unduly burdensome," or contain "confidential or proprietary" information.  Defendants have failed, however, to satisfy their burden of demonstrating why these Requests are either not relevant or overly burdensome.

Federal Rules of Civil Procedure 33 and 34 require a party objecting to discovery to state the reasons for that objection with specificity.  Courts have repeatedly held that generic, boilerplate objections such as objections that discovery requests are "overly broad," "unduly burdensome," "oppressive," or "not relevant" are improper and insufficient to satisfy the

requirements of Rules 33 and 34. *See Dolarian Capital, Inc. v. SOC, LLC*, No. 1:11–cv–0031–LJO–BAM, 2012 WL 4026818, at *1-2 (E.D. Cal. Sept. 12, 2012) (boilerplate objections were baseless and improper); *Marti v. Baires,* No. 1:08-cv-00653-AWI-SKO PC, 2012 WL 2029720, at *7 (E.D. Cal. June 5, 2012) (reliance on boilerplate objections is an abuse of the discovery process); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient).

Defendants' Responses to Relator's Requests are littered with baseless, boilerplate objections, which Defendants have not even attempted to explain. Moreover, as demonstrated above, these Requests are directly relevant to the core allegations of fraud in this case, as well as to Defendants' myriad Affirmative Defenses. This Court should compel Defendants to produce all relevant material responsive to these Requests.

### 4. This Court Should Overrule Defendants' Objections of Confidentiality, and Compel Defendants to Produce All Responsive Documents

Defendants also object to providing relevant discovery on the basis that the information requested is purportedly "confidential and proprietary" and/or on the basis that the information "may be subject to confidentiality agreements with third parties." Defendants raise this objection to the following document Requests: 5, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 50, and 53.

During the parties' meet-and-confer telephone call, Relator's counsel requested that counsel for Caremark produce the alleged confidentiality agreements referenced in Defendants' objections, or at a minimum, identify the documents which Defendants claim are subject to confidentiality. Defense counsel stated that they had not yet reviewed the alleged confidentiality

agreements, but would re-raise these objections when they encountered such agreements. Defendants also refused to identify any such agreements. *Dolarian Capital, Inc. v. SOC, LLC*, No. 1:11–cv–0031–LJO–BAM, 2012 WL 4026818, at *1-2 (E.D. Cal. Sept. 12, 2012) (finding a party's boilerplate objections to be baseless and demonstrative that the party made no reasonable effort to respond to discovery as required by F.R.C.P. 33 and 34).

Relator finds Defendants' confidentiality objection curious since the parties negotiated and submitted for the Court's approval a Protective Order in this case. The Protective Order, filed with this Court on May 21, 2013, already provides protections "to preserve the confidentiality of personal health information, as well as financial, commercial, and trade secret information which may be requested and produced in discovery in this action." *Stipulated Protective Order*, Dkt. No. 94, at 1. Defendants have not claimed that this Protective Order is inadequate to protect the purported "confidential" information which they now refuse to produce, nor have they provided any other basis for their objection.

The burden of demonstrating that otherwise relevant discovery material should not be produced is on the party resisting discovery. *Hicks v. Big Brothers/Big Sisters of Am.*, 168 F.R.D. 528, 529 (E.D. Pa. 1996); *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 56-57 (E.D. Pa. 1994). A mere assertion of confidentiality is not a valid objection to a party's discovery obligations. *Lykins v. CertainTeed Corp.*, No. 11-2133-JT M, 2012 WL 3542016, at *5 (D. Kan. Aug. 16, 2012); *High Point SARL v. Sprint Nextel Corp.*, 09-2269-CM-DJW, 2011 WL 4008009, at *2-3 (D. Kan. Sept. 9, 2011); *1221122 Ontario Ltd. v. TCP Water Solutions, Inc.*, No. 10-c-4942, 2011 WL 2516531, at *4 (N.D. Ill. June 23, 2011); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 283-84 (C.D. Cal. 1996).

Instead, parties seeking to protect discovery material on the basis of confidentiality are required to obtain a protective order. *Pansy v. Borough of Stroudsberg*, 23 F.3d 772, 786 (3d Cir. 1994); *Lykins v. CertainTeed Corp.*, No. 11-2133-JT M, 2012 WL 3542016, at *5 (D. Kan. Aug. 16, 2012); *Buzoiu v. Risk Management Alternatives, Inc.*, No. Civ. A.03-3579, 2004 WL 870700, at *1 (E.D. Pa. Apr. 5, 2004); *United Phosphorous Ltd. v. Fox*, No. 03-2024-JWL, 2003 WL 21241847, at *2 (D. Kan. May 2, 2003). An objection on the basis of confidentiality is rarely justified where there is a valid protective order in place. *Trusal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987); *High Point SARL v. Sprint Nextel Corp.*, 09-2269-CM-DJW, 2011 WL 4008009, at *3 (D. Kan. Sept. 9, 2011); *Feature Film Services, Inc. v. Arts & Entertainment Network Corp.*, No. 91-C-459, 1991 WL 290677, at *1 (N.D. Ill. Jan. 13, 1991).

There is no support for Defendants' position, particularly since the Court has entered the parties' Stipulated Protective Order. This Court should overrule Defendants' confidentiality objections and compel Defendants to produce all documents responsive to Requests Numbered 5, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 50, and 53.

### 5. This Court Should Overrule Defendants' Objections Based on Basic Industry Terms, and Compel Defendants to Produce All Responsive Documents

Defendants' Responses are full of objections to basic industry terms, many of which were extensively discussed in the parties' Motion to Dismiss briefing and this Court's Memorandum and Opinion denying Defendants' Motion to Dismiss. Furthermore, many of the terms objected to are referenced in documents that Relator received from Defendants.[33]   Defendants' objections

---

[33] For example, Defendants object to the definition of the terms "Process," "Adjudicate," and "Concurrent DUR" yet Defendants use these very same terms throughout the April 25, 2006 Managed Benefit Services Agreement Medicare Part D, between Defendant and MCS, Inc. *See* Ex. A, at 5–6, 7.

are too numerous to recount here.[34]  *See* Ex. A, at 5–12 for a full list and Relator's Responses

thereto.  Below are just a few examples of the terms to which Defendants object.

- "PDE data" or "PDE claims"
- "Part D Plan Sponsor"
- "prescriber identifier"
- "downstream entity"
- "MAC pricing" or "MAC pricing list"
- "NDC" or "NDC identifier" or "obsolete NDC"
- "gender specific"
- "concurrent DUR"
- "prior authorization"
- "Pharm/DUR, Inc."
- "audit"

It is disingenuous for Defendants to feign misunderstanding of these basic industry terms,

while at the same acknowledging that they are the largest provider of prescription and related

healthcare services in the United States, and that their subsidiaries fill or manage more than one

billion prescriptions per year.  *See* Defts'. Answer, ¶¶ 22, 24.  Moreover, many of the terms that

Defendants claim not to understand were discussed in detail in this Court's Opinion denying

Defendants' Motion to Dismiss.  *See, e.g., Spay*, 2012 WL 6645537, at *1-2 (discussing "Part D

Sponsor," "Downstream Entity," "PDE"), *6 (discussing "Pharm/DUR, Inc."); *24 (discussing

"physician identifiers"); *32 (discussing "NDC," and "Concurrent DUR"); *38 (discussing

"PDE claims").  Defendants' definitional objections are merely shallow attempts to delay

discovery and prolong this litigation.  *High Point SARL v. Sprint Nextel Corp*., 09-2269-CM-

DJW, 2011 WL 4008009, at *3 (D. Kan. Sept. 9, 2011) (rejecting objection that served no other

purpose other than maximizing the number of objections to requested discovery).

---

[34] Some of Defendants' definitional objections include objections to a term to the extent it is "inconsistent with controlling law" or "Medicare Part D rules, regulations, or guidance."  Defendants also assert this as a general objection.  Courts have found that such objections are "worthless" and "improper" and that they "leave the discovery proponent unsure whether or not the objection correlates to withheld information".  *U.S. ex rel. Minge v. Turbine Engine Components Tech. Corp.,* No 07–1212–MLB–KGG, 2011 WL 2607082, at *1 (D. Kan. July 1, 2011).

On the June 4, 2013 meet and confer call, Caremark's counsel stated generally that they would not withhold "any body of documents" on the basis of these objections. However, they refused to withdraw these objections or provide any clarity regarding whether any documents were being withheld on the basis of such objections. As Defendants have not produced any documents in response to many of Relator's Requests, it is impossible for Relator to tell which materials are being withheld on the basis of their definitional objections. For the reasons stated above, the Court should overrule Defendants' definitional objections and compel Defendants to produce all documents responsive to his Requests.

## V.   CONCLUSION

For the foregoing reasons, this Court should compel Defendants to promptly provide full and complete Responses to Relator's Requests. Relator respectfully requests that this Court find that: (1) discovery of information regarding PDE claims data and/or practices and procedures pertaining to those claims is not limited to MCS and Puerto Rico; (2) Relator's nationwide allegations relate to the six areas of fraud identified in the Complaint; (3) the relevant time period for purposes of Relator's Requests is January 1, 2006 to the present; (4) Defendants' objections as to confidentiality are overruled; and (5) Defendants' objections regarding their misunderstanding of certain basic industry terms are overruled. As such, Defendants should be compelled to provide complete Responses to all of Relator's Requests, including Requests 1, 3, 5–45, 48–50, 53, and 55–60.

Relator also requests that this Court enter an Order granting payment of Relator's expenses for filing this motion, including reasonable attorney's fees, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).   *See Hearst/ABC-Viacom Entertainment Services v. Goodway Marketing, Inc.*, 145 F.R.D. 64, 69 (E.D. Pa. 1992) ("there is no basis on which this Court could

find that defendants and its counsels' actions to have been 'substantially justified' with respect to the matters raised in the Motion to Compel").

Respectfully submitted,

/s/Marc S. Raspanti
Marc S. Raspanti
Michael A. Morse
Pamela C. Brecht
Francesco P. Trapani
I.D. Nos.: 41350, 80507, 62249, 209123
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Tel: (215) 320-6200/Fax: (215) 981-0082

Paul A. Traina
Jared W. Beilke
Steven J. Lipscomb
ENGSTROM, LIPSCOMB
& LACK, P.C.
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4113
Tel: (310) 552-3800/Fax: (310) 552-9434

Michael I. Leonard, Esquire
Leonard Law Offices, Inc.
203 N. LaSalle St., Suite 1620
Chicago, IL 60601
Tel: (312)380-6559

Attorneys for Plaintiff/Relator Anthony R. Spay

Dated: July 2, 2013

2548996/1